UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

THE UNITED STATES OF AMERICA,

               Plaintiff,            Case No.: 15-cr-20201-07

v.                               HON. MARIANNE O. BATTANI
                               United States District Judge

D7-GINO SOLOMON,

               Defendant.

---

## GOVERNMENT'S SENTENCING MEMORANDUM

---

Gino Solomon is 20 years old—and has killed two people. As a result of nearly continuous criminal offenses, Mr. Solomon has spent a significant portion of his life under court supervision participating in countless treatment programs, to no avail. Incredulously, Solomon was on GPS tether at the time of charged robberies and murder. To protect the community from Mr. Solomon, an extensive term of incarceration is necessary. Specifically, a sentence of 32 years will adequately punish defendant for his criminal conduct, and more importantly, ensure that the public is safe from Mr. Solomon's violent and deadly conduct. Therefore, the government recommends that the Court sentence Mr. Solomon to a term of incarceration of 32 years, followed by a three-year term of supervised release.

## **STATEMENT OF FACTS**

Related Through Money ("RTM") is a criminal street gang that committed a sundry of crimes including murder, robbery, assault, illegal firearm possession, home invasion, carjacking, financial scams, and other offenses.

The defendant has been a self-admitted member of RTM since 2011. During his father's 2013 trial before this Court, *United States v. Gino Solomon*, 12-cr-20473, the defendant testified that he was a member of RTM when he was released from juvenile detention in April of 2011. Solomon's affiliation with RTM was not limited to mere membership; rather, Solomon was a driving force behind some of the most violent criminal activity.

On June 5, 2013, Solomon and two other RTM gang members, Deontay McDonald and Darren Hartley, went on a crime spree. In the late afternoon, the three left the residence of a fellow gang member for the purpose of looking for someone to rob and/or carjack. Solomon was armed with a .22 caliber firearm. The three walked around until they came to a suitable victim—a man sitting in his car in his own driveway. Once there, they approached victim L.W. Solomon gave the .22 caliber firearm to Hartley, who then pointed it at L.W. and demanded the white Chevy Impala. According to L.W., one of the perpetrators without the gun struck

him in the face. The three gang members forced L.W. out of the Impala at gunpoint, took the car, and fled the scene.

Shortly thereafter, Solomon, McDonald, and Hartley arrived in the area of Pickford and West Outer Drive, in Detroit. They were driving the stolen Impala. Once there, the three saw a female victim, A.M., who was sitting in a Ford Taurus. Solomon told the others that he wanted to take her car. Solomon and McDonald got out of the stolen Impala and approached A.M. Solomon grabbed A.M. and pulled her out of the vehicle while displaying the .22 caliber firearm. A.M. explained that one of the perpetrators told her to get out of the car before he shoots her. Solomon and McDonald then got into the Taurus and drove off. As they drove from the scene, Solomon and McDonald lost control of the car and crashed. The two fled the crashed car and got back into the stolen Impala with Hartley.

After the second carjacking, Solomon told his accomplices that he knew where they could "hit a lick." Solomon, McDonald, and Hartley traveled in the stolen Impala to the area of Archdale and Kendall in Detroit. Once there, they parked near a residence on Archdale. After a few minutes, victim C.H. pulled his car into his driveway on Archdale and parked in his detached garage. As C.H. walked toward his house, Solomon and McDonald got out of the Impala and approached him. Solomon was armed with the .22 caliber firearm. Solomon and McDonald attempted to rob C.H., who was armed with a .38 caliber Smith &

Wesson revolver. During the robbery, a struggle ensued and Solomon struck C.H. several times. During the struggle, one of the firearms discharged, killing C.H. Solomon took C.H.'s .38 caliber firearm and he and McDonald fled back to the Impala. Solomon, McDonald, and Hartley fled the scene and returned to their fellow gang member's residence. Once there, they told the other RTM member what had occurred and showed him the firearm that Solomon took from victim C.H. Less than a month later, Detroit Police officers recovered C.H.'s stolen .38 caliber firearm during the arrest of McDonald and another RTM member, Shawn Miller.

## ADVISORY GUIDELINE RANGE

The parties' Rule 11 plea agreement calculated the advisory sentencing guideline range at 360 months (30 years) to Life. The probation department arrived at the same guideline range. The parties agreed in the Rule 11 plea agreement that sentence of imprisonment may not exceed 384 months (32 years) and may not be less than 300 months (25 years).

## SECTION 3553(a) FACTORS

Through 18 U.S.C. § 3553(a) Congress has provided the relevant objectives and factors to be considered by sentencing courts in imposing a "sentence sufficient, but not greater than necessary." Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant;

(2) the need for a sentence to reflect the basic aims of sentencing (including

retribution, deterrence and rehabilitation); (3) the kinds of sentences legally

available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy

statements; (6) the need to avoid unwarranted sentencing disparities among

defendants with similar records who have been found guilty of similar conduct;

and (7) the need for restitution. These factors support a sentence of 32 years'

imprisonment. More particularly, a sentence of that length will reflect the

seriousness of the offense, appropriately punish defendant, protect the public, and

deter him (and others) from engaging in similar activity.

As discussed above, the conduct that led to defendant's current criminal

conviction involved his active participation in a violent street gang. Defendant's

criminal conduct encompassed dangerous and violent activities, which included

murder, carjacking, and robbery. In a span of only a short few hours, Solomon

carjacked two people and killed another during a robbery. This extremely violent

conduct warrants a sentence of 32 years' imprisonment.

Solomon's criminal history (both before and after the charged incidents)

reinforces the appropriateness of a sentence of 32 years. Solomon is 20 years old

and has a lengthy juvenile record and an adult felony record.

Gino Solomon was first arrested in April of 2007, when he was 10 years old,

and charged with Unlawful Driving Away a Motor Vehicle, Receiving and

Concealing a Stolen Motor Vehicle, and related traffic offenses. Solomon stole a 1993 Chrysler from a gas station. Solomon pleaded guilty to Joyriding and was adjudicated a juvenile delinquent. The court placed him on intensive probation, which was eventually terminated in December of 2007. PSR ¶ 51.

The following year, in November of 2008, Solomon was arrested when he was 12 years old, and charged with Careless, Reckless, or Negligent Use of a Firearm Causing Death. Solomon shot and killed his 11-year old friend, Corey Merriweather. Apparently, Solomon had obtained a household firearm and discharged the gun while in the company of his neighborhood friend. Solomon was again adjudicated a juvenile delinquent and placed in a secure juvenile detention facility where he received treatment services including individual and group therapy, social living skills, anger management, academic tutoring, family counseling, and mentoring. PSR ¶ 52. In March of 2010, Solomon was released from custody and placed with family members.

In June of 2010, only a few months after being released from custody, Solomon set fire to a female classmate's hair. He was convicted of Aggravated Assault. PSR ¶ 53. Solomon was released to the care of his grandmother, and the Juvenile Court maintained jurisdiction and treatment efforts over defendant.

In June of 2011, Solomon was arrested for attempting to steal a car. He pleaded guilty to Attempted Breaking and Entering a Motor Vehicle and was placed in a secure juvenile detention facility.

In August of 2011, Solomon was charged with Larceny from the Person because he stole a cell phone from a 17-year old girl. The juvenile court dismissed the petition against the defendant because Solomon was already under the court's jurisdiction on another petition.

In the fall of 2011, Solomon was charged with assault after punching a staff worker at Starr Commonwealth several times. He later pleaded guilty to the assault. PSR ¶ 55.

On September 28, 2013, Solomon turned 17 years old (an adult in the State of Michigan). A few days later, on October 4, 2013, police officers found a firearm in Solomon's pocket and marijuana on the ground that he had dropped when police approached him. He was on juvenile court probation at the time of this incident. Defendant pleaded guilty to Attempted Carrying a Concealed Weapon and received three years of probation under the Holmes Youthful Trainee Act. PSR ¶ 56; his juvenile probation was terminated.

Just 20 days after being placed on adult felony probation, Solomon was arrested for Receiving and Concealing Stolen Property More Than $1000 but Less Than $20,000, and Delivery/Manufacture of Marijuana. Solomon was caught

driving a stolen car and in possession 13 bags of marijuana. He was sentenced to 10 to 60 months in prison. PSR ¶ 57.

The extent and nature of defendant's prior record weighs heavily in favor of a sentence of 32 years. Solomon's criminal history is shocking. His juvenile record consists of a firearm offense (resulting in death), theft, assault, and B&E. His adult convictions consist of a firearm offense and R&C (the drug dealing offenses were dismissed). Solomon was an adult for approximately 60 days and picked up two separate felony convictions during this time. Notably, Solomon was under court supervision during nearly all of his criminal activity and was an active gang member during his time on supervision.

When one considers defendant's history and characteristics, the only reasonable conclusion is that Solomon is a dangerous individual who will undoubtedly continue his criminal activity. There is a significant risk that there will be more victims of Mr. Solomon in the future. These facts also make a sentence of 32 years appropriate.

In sum, given Mr. Solomon's disturbing and violent conduct, including murder, coupled with his criminal history and inability to conform his actions to acceptable social norms, there is only one sentencing alternative: a lengthy term of incarceration. Given all of the circumstances, the risk that Solomon will harm another person is considerable and real; defendant is a significant danger to the

United States v. Gino Solomon, 15-cr-20201
Government's Sentencing Memorandum

community and the public must be protected. This, coupled with the fact that Mr.

Solomon must be punished for his abhorrent conduct, makes a sentence of 32

years' imprisonment appropriate. Considering the §3553(a) factors, the

government recommends that the Court sentence defendant to a term of

imprisonment of 32 years (as being sufficient but not greater than necessary),

followed by a three-year term of supervised release.

                                        Respectfully submitted,

                                        BARBARA L. MCQUADE
                                        United States Attorney

                                        *s/A. Tare Wigod*
                                        A. Tare Wigod
                                        Assistant United States Attorney
                                        211 W. Fort Street, Suite 2001
                                        Detroit, MI  48226
                                        tare.wigod@usdoj.gov
                                        (313) 226-9191
                                        P58479

Dated: January 3, 2017

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 3, 2017, an employee of the United States

Attorney's Office filed the attached document with the ECF system which will send

notice to

Jerome Sabbota, attorney for Gino Solomon.


<u>s/A. Tare Wigod</u>
A. Tare Wigod
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
tare.wigod@usdoj.gov
(313) 226-9191
P58479