UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

THE UNITED STATES OF AMERICA,

        Plaintiff,        Case No.: 15-cr-20201-06

v.        HON. MARIANNE O. BATTANI
        United States District Judge

D6-DEONTAY MCDONALD,

        Defendant.

---

**GOVERNMENT'S SENTENCING MEMORANDUM**

---

Deontay McDonald has repeatedly proven himself to be a danger to the community. Dealing drugs, multiple assaults, a shooting, a robbery, carjackings, and murder—these are all on McDonald's criminal resume—and he is only 21 years old. To protect the community from Mr. McDonald, and to adequately punish him for his relentless criminal conduct, an extensive term of incarceration is necessary. The government therefore recommends that the Court sentence Mr. McDonald to a term of incarceration of 20 years, as being sufficient, but not greater than necessary, followed by a five-year term of supervised release.

## STATEMENT OF FACTS

Related Through Money ("RTM") is a criminal street gang that committed a sundry of crimes including murder, robbery, assault, illegal firearm possession, home invasion, carjacking, financial scams, and other offenses.

The defendant has been a member of RTM since 2011, the year the gang was formed.


McDonald (on left) and Owens (on right)

McDonald's affiliation with RTM was not limited to mere membership; rather, he participated in violent criminal activity over the course of several years.

On June 5, 2013, McDonald and two other RTM gang members, Gino Solomon and Darren Hartley, went on a crime spree. In the late afternoon, the three left the residence of a fellow gang member for the purpose of looking for someone to rob or carjack. The group was armed with a .22 caliber firearm. The three walked around the neighborhood until they came to a suitable victim—a man

sitting in his car in his own driveway. They approached the victim, L.W., and displayed the .22 caliber firearm. The three demanded the white Chevy Impala and forced L.W. out of the vehicle—but not before punching him in the face. After assaulting L.W., McDonald and his fellow gang members got into the Impala and fled the scene.

Shortly thereafter, McDonald, Solomon, and Hartley arrived in the area of Pickford and West Outer Drive, in Detroit. They were driving the stolen Impala. Once there, they saw a female victim, A.M., sitting in a Ford Taurus. Solomon told the others that he wanted to take her car. McDonald and Solomon got out of the stolen Impala and approached A.M. Hartley stayed in the Impala. Solomon grabbed A.M. and pulled her out of the vehicle while displaying the .22 caliber firearm. McDonald and Solomon then got into her car and drove off. As they drove from the scene, McDonald and Solomon lost control of the car and crashed. The two fled the crashed car and got back into the stolen Impala with Hartley.

After the second carjacking, Solomon told his accomplices that he knew where they could "hit a lick." Solomon, McDonald, and Hartley traveled in the stolen Impala to the area of Archdale and Kendall in Detroit. Once there, they parked near a residence on Archdale. After a few minutes, victim C.H. pulled his car into his driveway on Archdale and parked in his detached garage. As he walked toward his house, McDonald and Solomon got out of the Impala and approached

C.H. Solomon was armed with the .22. The robbery quickly went awry because C.H. was armed with his own firearm, a .38 caliber Smith & Wesson revolver. C.H. resisted the robbery and Solomon struck C.H. several times. McDonald stood a few feet away. During the struggle, one of the firearms discharged, killing C.H. After the murder, Solomon took C.H.'s firearm and he and McDonald ran back to the Impala. Solomon, McDonald, and Hartley fled the scene and returned to their fellow gang member's residence.

## ADVISORY GUIDELINE RANGE

The parties' Rule 11 plea agreement calculated the advisory sentencing guideline range at 360 months (30 years) to Life. The probation department arrived at the same guideline range. PSR ¶ 75. However, the parties agreed in the Rule 11 plea agreement that sentence of imprisonment may not exceed 288 months (24 years) and may not be less than 228 months (19 years).

## SECTION 3553(a) FACTORS

Through 18 U.S.C. § 3553(a) Congress has provided the relevant objectives and factors to be considered by sentencing courts in imposing a "sentence sufficient, but not greater than necessary." Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence and rehabilitation); (3) the kinds of sentences legally

available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution. These factors support a sentence of 20 years' imprisonment. More particularly, a sentence of that length will reflect the seriousness of the offense, appropriately punish defendant, protect the public, and deter McDonald (and others) from engaging in similar activity.

As discussed above, the conduct that led to defendant's current criminal conviction involved his active participation in a violent street gang. Defendant's criminal conduct encompassed dangerous and violent activities, which included murder, carjacking, and robbery. In a span of only a short few hours, McDonald participated in two carjackings and a murder. This extremely violent and callous conduct warrants a sentence of 20 years' imprisonment.

Further, McDonald's criminal history, which is astonishing for a 21-year old, reinforces the appropriateness of a 20-year sentence.

McDonald's first documented run-in with law enforcement was in November of 2008 when he was 13 years old. A Detroit Public School officer arrested McDonald inside a school for possessing marijuana packages for sale (12 individual baggies). McDonald was charged as a juvenile offender. The matter was ultimately dismissed.

In December of 2008—only a month after his first arrest—McDonald was again arrested for drug dealing. This time, McDonald was selling in front of a convenience store. The store owner contacted the police. Upon their arrival, the officers approached McDonald, who fled on foot. After a chase, officers caught defendant and arrested him. During the chase, McDonald discarded a baggie containing seven individual packets of marijuana. McDonald was charged as a juvenile offender. The matter was ultimately dismissed.

In 2010, when McDonald was 14 years old, he was again arrested by police. McDonald was in a vacant house and discharged a firearm multiple times. The gentlemen who lived next door to the vacant house told McDonald to stop firing the gun. In response, McDonald reloaded his gun and proceeded to pistol whip the victim, who received injuries to his head. In fear for his life, the victim fled from the scene; in response, McDonald discharged his firearm in the direction of the victim. McDonald was charged as a juvenile and pleaded guilty to Felonious Assault. PSR ¶ 52.

In July of 2011, while under the juvenile court's supervision, McDonald was again arrested. Dearborn police officers responded to a call of suspicious circumstances involving a vehicle. Upon arrival, officers saw McDonald and Khalil Thedford (brother of co-defendant Meyer Thedford) inside the front area a vehicle which was not theirs. McDonald was in possession of a large rock and

Thedford was in possession of a screwdriver. The two were actively trying to "punch" the ignition in an effort to steal the car. McDonald was arrested, charged, and placed on intensive probation. PSR ¶53.

Court supervision did not have its intended effect on Mr. McDonald. On October 14, 2011, Officer Regina Hardy took a statement from two students who attended Cody High School. The students explained that they had been punched and kicked by a group of RTM gang members as they left the library. The victims gave Officer Hardy a list of gang members who assaulted them, which included Mr. McDonald. Defendant was charged with assault and battery.

A few months later, on December 1, 2011, there was a large fight at Cody High School. DPS officers arrested ten members of RTM, including Mr. McDonald, for fighting with other students and damaging a teacher's car.

In April of 2013, several RTM gang members, including defendant, went to Cody High School in an effort to intimidate and threaten a particular student, A.K. Ms. K. was an eyewitness to the homicide of Franklin Wallace a few weeks earlier committed by RTM member Brandon Owens. The gang members were walking around campus asking where Ms. Kennedy was. Their intent was obvious: to dissuade A.K. from "snitching." One student explained that the RTM gang members, including McDonald, stood outside his classroom window yelling "RTM for life." The student also saw Owens waiving around a pistol.

McDonald continued his criminal activities. On June 6, 2013, *the day after the murder of C.H.*, McDonald and Hartley drove the stolen Chevy Impala to a house on Harlow in Detroit. McDonald went to the back of the house and tried to break inside. His attempt to gain entry was unsuccessful, however, because McDonald cut his arm breaking out the window. McDonald fled back to the car and he and Hartley left the scene. During the ensuing investigation, detectives found blood at the scene of the attempted home invasion, which was scientifically matched to McDonald. Additionally, officers located the stolen Chevy Impala, which McDonald had dumped and torched. Despite McDonald's attempt to conceal his criminal activity, investigators also found his blood on the car.



Charred car seat of stolen Impala



McDonald's blood on stolen Impala

Less than two months later, on July 21, 2013, officers responded to Henderson Park in Detroit on a call of an armed robbery. McDonald had pulled out a firearm and threatened two young females. He demanded their purse and phone, which they turned over. At the time, McDonald was with another RTM gang member. Police responded and found McDonald and other RTM members at a nearby convenience store. When they arrested him, McDonald was unarmed; however, officers saw another RTM member hide a gun in the store. Officers retrieved the firearm and discovered that it was C.H.'s .38 caliber Smith & Wesson revolver that was taken during his murder. McDonald pleaded guilty to unarmed robbery and felony firearm as a result of this incident. He is currently serving a sentence with the Michigan Department of Corrections.

The extent and nature of defendant's prior record weighs heavily in favor of a sentence of 20 years. McDonald's criminal history is disturbing, and he has shown no willingness to abide by very basic rules of law, even while under the supervision of the criminal justice system.

In light of defendant's history and characteristics, McDonald is a dangerous individual who will undoubtedly continue his criminal activity. To date, only incarceration has deterred McDonald from criminal activity, and, based on his past conduct, there is a significant risk that but for continued incarceration there will be

more victims of Mr. McDonald in the future. A sentence of 20 years will reflect the basic aims of sentencing such as retribution, deterrence, and rehabilitation.

As previously stated, the Sentencing Guidelines in this case are 360 months to Life. With the Guidelines as a starting point, a sentence of 20 years is reasonable and far from "greater than necessary," in light of McDonald's crimes and criminal history.

As it relates to the need to avoid unwarranted sentencing disparities, it is worth noting that at the time McDonald committed these crimes he was 17 years old (i.e. an adult in the State of Michigan). His participation in the homicide of C.H. is felony murder. If he were convicted in the State, his sentence could have been mandatory life.[1] Thus, as compared to others who have been convicted of murder, a sentence of 20 years is evenhanded and no "greater than necessary."

In sum, given Mr. McDonald's disturbing and violent conduct coupled with his criminal history and inability to conform his actions to acceptable social norms, there is only one sentencing alternative: a lengthy term of incarceration. Given all of the circumstances, the risk that McDonald will harm another person is considerable and real; defendant is a significant danger to the community and the public must be protected. This, coupled with the fact that Mr. McDonald must be

---

[1] Even more fortuitously, had the charged incidents occurred a few months later, after McDonald turned 18, he would have been an adult in the federal system, and would have been subject to the death penalty or mandatory life.

punished for his criminal conduct, makes a sentence of 20 years' imprisonment appropriate. Considering the §3553(a) factors, the government recommends that the Court sentence defendant to a term of imprisonment of 20 years (as being sufficient but not greater than necessary), followed by a five-year term of supervised release.

        Respectfully submitted,

        BARBARA L. MCQUADE
        United States Attorney

        *s/A. Tare Wigod*
        A. Tare Wigod
        Assistant United States Attorney
        211 W. Fort Street, Suite 2001
        Detroit, MI  48226
        tare.wigod@usdoj.gov
        (313) 226-9191
        P58479

Dated: January 31, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2017, an employee of the United States Attorney's Office filed the attached document with the ECF system which will send notice to

Maria Mannarino, attorney for Deontay McDonald.

*s/A. Tare Wigod*
A. Tare Wigod
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
tare.wigod@usdoj.gov
(313) 226-9191
P58479