UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

Plaintiff,

vs.

**BRANDON SIMS,**

Defendant.

Case No.: 15-20201-003

Honorable Marianne O. Battani
United States District Judge

## *DEFENDANT'S' SENTENCING MEMORANDUM*

In accordance with the Rule 11 Plea Agreement, Brandon Sims pled guilty to Count 1: Racketeering Conspiracy, 18 USC § 1962(d), 18 USC § 1963.

The maximum term of imprisonment that Mr. Sims will face is 20 years. A period of supervised release can be imposed to, of not more than 3 years.

The Defendant's Rule 11 Plea Agreement does not include an agreement upon guideline scoring or range. The Government asserts that the Defendant's guideline range is cross-referenced under USSG §2A1.5, Conspiracy to commit murder; for the murder of Marcus Cole as relevant conduct, which with the Defendant's Criminal History, results in a guideline range of 168-210 months.

Initially, it was the Defendant's position that, he was going to argue, whether

or not the relevant conduct applied. However, after having witnessed the sentencing hearing of Meyer Thedford and discussions with my client and the Government, regarding Sentencing. The Defendant withdrew his Objections to the PSR and further states that, it is the Defendant's understanding that the Government will ask for a Sentence between 97 – 121 months. The Defendant based upon that understanding, is asking for a Sentence of 97 months, which is sufficient, but not greater than necessary to comport with the mandates of 3553.

Recognizing that this Honorable Honorable Court is not bound by the recommendation, it is the undersigned's belief that a sentence as suggested by the United States Probation Office, is excessive given the nature of Mr. Sims' limited criminal history. Defendant had only (1) prior felony conviction and a number of juvenile convictions, which is the main reason was increased. This writer is suggesting that the Defendant's criminal history is not realistically reflected. Again, this writer asks that this Honorable Court sentence the Defendant to a guideline range of 97 months, which is sufficient, but not greater than necessary to meet the mandates of §3553(a).

*Advisory Guideline Range*

2

## GUIDELINES

## LEGAL PRINCIPLES

In *United States v. Booker*, the Supreme Court held that the federal sentencing guidelines had to be advisory, and directed sentencing courts to comply with the entire statutory command of 18 USC §3553(a) and consider all of the statutory factors in determining an individualized sentence which is "sufficient but not greater than necessary." *Booker*, 543 US 220 (2005). Thus, a sentencing court must (1) correctly calculate the advisory guideline range, (2) consider all of the factors in 18 USC §3553(a), and (3) impose a sentence which is sufficient but not greater than necessary to reflect the purposes of §3553(a) (2). *United States v. Cage*, 458 F3d 537, 540 6th Cir., 2006)

The relevant text of the factors listed in Title 18 U.S.C. § 3553(a) provides:

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)….[And] shall consider –
>
> 1. The nature and circumstances of the offense and the history and Characteristics of the defendant;
>
> 2. The need for the sentence imposed;
>
> (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

3

  (b) to afford adequate deterrence to criminal conduct;
  (c) to protect the public from further crimes of the defendant; and
  (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. the kinds of sentences available;
4. the kinds of sentence and the sentencing range established for …the applicable category of the defendant as set forth in the guidelines;
5. any pertinent policy statements [of the Sentencing Commission] …..

\*\*\*\*

6. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; …..

Because the Sentencing Guidelines are now only advisory, this Court can vary its sentence from the advisory guideline so long as the Court imposes a sentence which meets the requirements of 18 USC §3553(a). *United States v. Collington*, 461 F3d 805, 808 (6th Cir. 2006). There is no presumption or assumption that a sentence which varies from the advisory guideline range is reasonable or unreasonable, and this Court is free to disagree with the correct advisory guideline range on general policy grounds, individualize fact grounds, or because this Court concludes a different sentence is

4

appropriate "regardless" of the guideline range. *Rita,* 127 S. Ct. 2456, 2463, 2468 (2007). However, to facilitate appellate review, the sentencing court must give specific reasons for imposing a sentence which is outside of the guideline range. 18 USC §3553(c)(2); *United States v. Vonner*, 516 F3d 382, 387 (6th Cir. 2008)(en banc).

The Sixth Circuit held in *United States v. Coffee,* 434 F3d 887 (CA 6, 2006) that:

> "Booker did not eliminate judicial fact-finding. Instead, the remedial majority gave district courts the option, after calculating the guideline range, to sentence a defendant outside the resulting guideline range. *Booker*, 125 S. Ct. at 764, 769; 411 F. 3d 675, 678 (6th Cir. 2005). District Courts, in cases such as these, must therefore, calculate the guideline range as they would have done prior to *Booker*, but then sentence defendants by taking into account all the relevant factors of 18 USC 3553, as well as the guideline range. See also, *U.S. v. Stone,* et al, ___F3d___ (CA 6, 12/23/05).

Moreover, a number of post-*Booker* opinions, exemplified by Judge Adelman's decision in *United States v. Ranum*, 353 F. Supp. 2d 984, 985-986 (ED Wis. 2005) have recognized that *Booker, supra,* directs sentencing courts to consider all of the 3553(a) factors, many of which the guidelines either reject or

5

ignore." As Judge Adelman further explained:

> For example, under 3553(a) (1) a sentencing court must Consider the "history and characteristics of the defendant." But under the guidelines, courts are generally forbidden to consider the defendant's age, U.S.S.G. 5H1.1, his education and vocational skills, 5H1.2, his mental and emotional condition, 5H1.3, his physical condition including drug or alcohol dependence, 5H1.4, his employment record, 5H1.5, his family ties and responsibilities, 5H1.6, his socio-economic status, 5H1.10, his civic and military contributions, 5H1.11, and his lack of guidance as a youth, 5H1.12, the guidelines prohibition of considering these factors cannot be squared with the 3553(a)(1) requirement that the court evaluate the defendant's history that the guidelines permit courts to consider is criminal history. Thus, in cases in which a defendant's history and character is positive, consideration of all of the 3553(a) factors might call for a sentence outside the guideline range. *Id* at 986.

## The Nature and Circumstances of the Offense and The History and Characteristics of the Defendant

Mr. Sims is undoubtedly a member of RTM. However, his involvement in violent crimes, as so many others, is just not there. This writer observed the sentencing of Defendant, Meyer Thedford, and heard the Court and the Government question and recite instances, where Mr. Thedford, was involved in what were considered significant crimes of violence; (1) he was supposedly in the

6

car with other members of RTM looking for "Squid"; Mr. Sims was not. (2) That he was potentially there on the date that "Squid" was killed; Mr. Sims was not. (3) That Mr. Thedford was at McDonald's on several occasions when shootings took place (including the shooting of Josh Moore); Mr. Sims was not. This writer does not imply to this Honorable Court, that Mr. Sims was not a member of the gang or that he was not involved in criminal activity. However, what this writer is suggesting, is that Mr. Sims was not involved in crimes of excessive violence, i.e. murders. The Government and the undersigned have agreed that for relevant conduct purposes, Mr. Sims should be held accountable for the death of Marcus Cole. However, when the Court begins to analyze the differences between, Mr. Thedford and Mr. Sims, the above-mentioned circumstances are certainly to be taken into account. Mr. Sims is maybe 5'2, 120-130 lbs. Why is that significant? As the Court has noted, most of these young men involved in this particular conspiracy, were all small men or very young men. Their size was the reason for them coming together to form a gang. Initially, it was only to protect themselves against other bullies that came after them, because of their size. It is quite unfortunate in their zeal to protect themselves, that they became, in some cases, a bigger threat to the community than the people, who were bullying them.

However, the undersigned only apprises this fact to give the Court some understanding, as to why these young men initially came together. They are very small men and the Napoleonic complex that is often bandied about in our society, absolutely rings true with these young men. Mr. Sims grew up in a household, absent his father, as is the situation so many times in these cases that come before the Court. His mother did the best she could, but she was a young mother. The Defendant at an early age, attempted to end his life, for the reason that he felt like he had no place to turn and no one to help him. His mother, as indicated in the PSR, was constantly working. His father was not in the home. His mother had difficult financial problems. He lived in a neighborhood that fomented trouble and opportunities to become involved in crime.

Mr. Sims reports that he was committing petty crimes, initially to help support his family. Whether that is truthful or not, it certainly suggests that the environment and the family life that he had was one with little positive reinforcement.

From the very beginning, his life was bleak. The old adage, it takes a village to raise a child, for Mr. Sims, there was no village and there was no one to raise

8

him. Thus he finds himself, standing before this Honorable Court this afternoon, convicted of serious crimes. It is this writer's belief that Mr. Sims recognizes that he has to be punished for his involvement in RTM Gang, but it is his hope, while incarcerated to gain his GED and develop skills that will assist him in coming out and being a productive and active citizen of society.

It goes without saying, that Mr. Sims' behavior is not one to be proud of, or to sing its praises. Mr. Sims acknowledges that he must face this reality and face the consequences of his behavior. Nothing can change where he comes from, but as he has stated to this writer, he can certainly change where he is going. As he will stand before this Honorable Court on March 1, 2017, he recognizes and says to this Honorable Court, this is the first day of my life and I am going to make my life and my child's life, a better one than the one, that I was raised. This writer believes him. I believe that he has seen the light and this Court will never see him again. It would be unconscionable for the undersigned to suggest that, he would never be before the court again, but it is the undersigned's belief that based on what Mr. Sims has indicated to me, that he has seen the light and he is ready to move forward.

Mr. Sims, despite his mistakes, also has his personal demons and he believes that they have affected his judgment. Mr. Sims has had problems with alcohol, drugs i.e, pills and cough syrup; in addition to barely surviving day to day. He believes that he needs help in combating his drug addiction and would ask this Honorable Court, if it is able to provide him with the help necessary for him to become free of drug addiction. Although he has been incarcerated for almost 2 years, he wants to urge this Court to allow him to receive the assistance necessary to resolve any future issues that he may have with drug abuse and his own mental health, because the fact that he's contemplated and attempted suicide once and the walking on the precipice of life, at such an early age, suggests that Mr. Sims needs a great deal of mental health and substance abuse treatment to recover and progress towards being a better man.

For all of these reasons the Defendant requests that this Honorable Court sentence the Defendant to a sentence of incarceration of 97 months, and such a sentence would comply with the mandates of 3553(a).

**To afford adequate deterrence to criminal conduct**

Again, a sentence of imprisonment as contemplated by the parties, provides

adequate deterrence to criminal conduct for both defendant and society. It sends a message to the public that this behavior will not be tolerated. Its sends a message to the public that this conduct results in one's freedom being lost for a significant period of time.

### To protect the public from further crimes of defendant

A term of incarceration as contemplated by the parties does provide that protection to the public. Brandon Sims will be placed in the federal system. While he is being supervised in that system, the public is protected.

### Provide the defendant with needed education or vocational training, medical care or other correctional treatment in the most effective manner

Mr. Sims was incarcerated as a juvenile and received no skills, educational or vocational training. No methods or means, which would enable him to support himself.

He indicates to this writer that he is hopeful that while he is incarcerated he will obtain his GED and find a vocational skill, which can bring him back into society, which will assist him toward being a productive member of society for the remainder of his life.

### To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense

11

The sentencing range agreed to between the parties in our sentencing memorandums does reflect the seriousness of the offense, promotes respect for the law and does provide just punishment. The parties have agreed that the sentence of imprisonment between 97 – 120 months, if the Court concurs. This sentence will also be accompanied by a period of supervised release, up to three years. This is a significant period of incarceration. It demonstrates to the public that one that engages in such activity that Mr. Sims engaged in, will spend a great deal of his life in the prison system and will be monitored by this Honorable Court.

**The need for the sentence to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct**

On February 7, 2017, Meyer Thedford, Docket No. 16-cr-20186, was sentenced to 120 months in prison. This court, after having a hearing, determined that Meyer Thedford, should be held accountable under relevant conduct for the death of Marcus Cole. As indicated earlier, in this Sentencing Memorandum, the court enumerated several reasons why Mr. Thedford should be held accountable. The undersigned indicated earlier, the difference between Mr. Sims and Mr. Thedford's involvement in the crimes. It is no doubt that he was involved in the

12

armed robberies, but he was <u>not</u> involved actively in the search for Marcus Cole. He was not riding in a car. He was not there on the day of the shooting. He was not there when the other violent acts took place, in what they call (Murder McDonalds) nor was he present when Josh Moore was shot. For these reasons, Mr. Sims' sentence should certainly be different than Mr. Thedford's. As the undersigned has indicated, he is asking for a sentence of 97 months. The Government has asked for a sentence of 108 months. Both those numbers reflect the differences, but also the similarities between Meyer Thedford and Brandon Sims.

Defendant Deontay MCDonald was given a sentence of 240 months. However, he was involved in an actual murder. He was there and he pulled the trigger. Defendant Brandon Owens, who also was involved in an actual shooting, pulling the trigger was sentenced to 188 months. Mr. Sims certainly should not stand in the same shoes as the aforementioned. A sentence of 97 months, this writer believes is sufficient, but not greater than necessary to meet all the mandates of 3553 and would so urge this Honorable Court to sentence the Defendant to the same.

## Conclusion

Brandon Sims respectfully requests that this Honorable Court take the above

into account when fashioning a proper sentence for him. Mr. Sims understands that he is at a crucial stage in his life. The Court is going to impose a significant prison sentence, and this realization has had a significant impact on Mr. Sims and his family. He is prepared and willing to obtain the necessary skills, which will give him the opportunity to be a productive member of society. Although Mr. Sims cannot go back and change the things that he has done in the past, he is prepared to change what he does in the future and how he relates to society. Again, the undersigned urges this Honorable Court to sentence Mr. Sims to a sentence of incarceration for 97 months, which is sufficient, but not greater than necessary to comply with the mandates of 18 USC § 3553(a).

Respectfully submitted,

/s/ Richard H. Morgan, Jr
RICHARD H. MORGAN, JR.
Law Office of Richard H. Morgan, Jr., PC
Attorney for Defendant
485 Orchard Lake Road, Ste. 203
Pontiac, Michigan 48341
(248) 334-8970 Office
(248) 334-9199 Fax
E-mail: rhm_jr@msn.com
Bar No. P23924

Dated: February 24, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2017, I electronically filed the foregoing documents with the Clerk of the Court using the ECF System, and the pleading were also sent to the following:

A. Tare Wigod, Assistant United States Attorney –

tare.wigod@usdoj.gov

/s/ Richard H. Morgan, Jr.
RICHARD H. MORGAN, JR.
Law Office of Richard H. Morgan, Jr., PC
Attorney for Defendant
485 Orchard Lake Road, Ste. 203
Pontiac, Michigan 48341
(248) 334-8970 Office
(248) 334-9199 Fax
E-mail: rhm_jr@msn.com

Dated: February 24, 2017